# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DWAYNE SIDA,

      Plaintiff,

vs.                                            No. CIV 17-0638 JB\GJF

SOCIAL SECURITY ADMINISTRATION
NANCY A. BERRYHILL, acting
Commissioner of SSA,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum, filed January 24, 2018 (Doc. 24)("Motion"). The Motion is fully briefed. See Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision, filed March 23, 2018 (Doc. 26)("Response"); Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 23, 2018 (Doc. 30). Having meticulously reviewed the entire record and the briefing, the Court concludes that the Motion has merit and that the Court should reverse and remand the Administrative Law Judge's ruling.[2]

---

[1]The Court previously issued an Order that granted the requests in the Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum, filed January 24, 2018 (Doc. 24), and reversed the Administrative Law Judge's ruling. See Order at 1, filed September 28, 2018 (Doc. 32)("Order"). In the Order, the Court stated that it would later issue a Memorandum Opinion and Order more fully detailing its rationale for this decision. See Order at 1 n.1. This Memorandum Opinion and Order is the promised opinion that details the Court's rationale for the previous Order and that remands the Administrative Law Judge's ruling.

[2]Pursuant to 28 U.S.C. § 636(b)(4), the Court withdraws the Order of Reference Relating to Social Security Appeals, filed October 20, 2017 (Doc. 19), to the Honorable Gregory J. Fouratt, United States Magistrate Judge for the United States District Court for the District of New Mexico.

## FACTUAL BACKGROUND

Plaintiff Dwayne Sida was born August 6, 1970. <u>See</u> Administrative Record at 71, filed October 20, 2017 (Doc. 18-1)("AR"). He graduated high school and attended "a couple of years of college," but did not receive a degree. AR at 45. From 1989 to 2011, Sida held semi-continuous employment, working as a heavy equipment operator, sandblaster, long-haul truck driver, and maintenance man. <u>See</u> AR at 220.

Sida filed applications for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 404 et seq. and § 1381 et seq. ("the Act"), on November 6, 2012. <u>See</u> AR at 191-98. Sida claimed disability beginning on November 1, 2010, based on a shattered left foot, post-traumatic stress disorder ("PTSD"), depression, high blood pressure, and anxiety. <u>See</u> AR at 71. The Social Security Administration ("SSA") denied Sida's application initially and upon reconsideration. <u>See</u> AR at 79-80, 89-90. At his request, Sida received a de novo hearing before Administrative Law Judge ("ALJ") Barry O'Melinn, at which Sida, Sida's attorney, and a vocational expert ("VE") appeared. <u>See</u> AR at 32-70. On March 4, 2016, ALJ O'Melinn issued his decision, concluding that Sida is not disabled within the Act's meaning. <u>See</u> AR at 14-26. Sida appealed to the SSA Appeals Council, but it declined review. <u>See</u> AR at 1-3. As a consequence, ALJ O'Melinn's decision became the SSA Commissioner's final decision. <u>See</u> 20 C.F.R. § 422.210(a) (2018).

## PROCEDURAL BACKGROUND

Sida then timely filed his appeal with this Court. <u>See</u> Complaint, filed June 13, 2017 (Doc. 1). Sida advances three grounds for relief. First, he argues that ALJ O'Melinn breached his duty to develop the administrative record regarding Sida's psychological impairments. <u>See</u> Motion

at 15-18. Next, he contends that ALJ O'Melinn improperly rejected the opinion of Caryn Stone, his treating licensed-mental-health counselor. See Motion at 18-22. Last, he contends that ALJ O'Melinn's step five analysis was legally infirm and bereft of substantial evidence. See Motion at 22-27.

**1. The ALJ's Decision.**

ALJ O'Melinn issued his decision on March 4, 2016. See AR at 11. At step one, he concludes that Sida has not engaged in substantial gainful activity since the alleged disability onset date of November 1, 2010. See AR at 16. At step two, ALJ O'Melinn finds Sida's bilateral shoulder pain and torn rotator cuff, along with his "mental disorders variously diagnosed as posttraumatic stress disorder, depression[,] and anxiety," to be severe impairments. AR at 17. In contrast, ALJ O'Melinn finds Sida's hypertension, foot pain, thyroid and liver disorders, and alcohol abuse to be non-severe. See AR at 17-18.

At step three, ALJ O'Melinn concludes that none of Sida's impairments, alone or in combination, meet or medically equal the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, App. 1. See AR at 19-20. Specifically, ALJ O'Melinn considers Sida's mental impairments under Listing 12.04 (affective disorders) and 12.06 (anxiety-related disorders). ALJ O'Melinn determines that the evidence does not satisfy the paragraph B criteria of these Listings,[3]

---

[3]Paragraph B of Listings 12.04 and 12.06, which were identical at the relevant time in both, describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder that the diagnostic description describes. To meet either of these two Listings, a claimant must exhibit at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

"[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR at 20.  He then explains his reasoning regarding paragraph B's four subparts.

ALJ O'Melinn begins by evaluating Sida's activities of daily living ("ADLs").  See AR at 19.  ALJ O'Melinn finds Sida to have only a mild restriction.  See AR at 19.  ALJ O'Melinn references Sida's testimony that "he could do household cleaning and chores," along with Sida's self-reporting that he can clean, perform most house repairs, do yard work, or work with firewood for up to two hours per day.  AR at 19.  Moreover, ALJ O'Melinn focuses on Sida's self-reporting that, to the extent he has limitations in personal care, they "[are] not due [to] mental functioning but rather lack of transportation or money."  AR at 19.

Second, ALJ O'Melinn finds Sida has only mild difficulties with social functioning.  ALJ O'Melinn cites statements from Sida's "Adult Function Report," AR at 236-45, in support, including that Sida can shop for basic needs when able to find transportation, and that Sida receives and maintains food stamps.  See AR at 19.  ALJ O'Melinn further observes that Sida visits his family on a regular basis, sees his girlfriend daily, and reports no general difficulties in getting along with others.  See AR at 19.

Third, ALJ O'Melinn finds that Sida has moderate difficulties with concentration, persistence, and pace.  ALJ O'Melinn describes Sida's accounts of difficulties, including difficulty

---

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, App. 1, Part A1, 12.04(B) & 12.06(B) (2015).  On March 27, 2017, the SSA significantly altered the language of these listings in ways that are not relevant to this decision.

following written instructions, finishing what he starts, and handling stress well. See AR at 19. ALJ O'Melinn does not, however, take all of Sida's self-reported challenges at face value. Indeed, while Sida "reported he could not handle money by paying bills, counting change, etc.," ALJ O'Melinn emphasizes Sida's own explanation that "the reason was due to [Sida's] lack of a job." AR at 19. Similarly, while Sida alleges memory problems, "the only example he gave is walking from one room to another and forgetting what he was going to the new room to get." AR at 19. To ALJ O'Melinn, this problem represents "a routine experience," which, when considered alongside Sida's other self-reporting, leads ALJ O'Melinn to find no more than a moderate difficulty in this area.

ALJ O'Melinn concludes his paragraph B discussion by finding that Sida "has experienced no episodes of decompensation, which have been of extended duration." AR at 20.

Alongside his paragraph B findings, ALJ O'Melinn also considers whether Sida qualifies under the paragraph C criteria.[4] ALJ O'Melinn answers this inquiry in the negative, finding that "the evidence fails to establish the presence of the 'paragraph C' criteria." AR at 20.

---

[4]At the time of ALJ O'Melinn's decision, Paragraph C of Listings 12.04 and 12.06 provided that, in those instances where a claimant cannot meet the Paragraph B criteria, the claimant may nevertheless qualify if he or she can show:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

After concluding that none of Sida's impairments satisfy an applicable Listing, ALJ O'Melinn moves to step four and assesses Sida's residual functional capacity ("RFC"). See AR at 16-21. After stating that he had given "careful consideration of the entire record," ALJ O'Melinn determines that Sida

> has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that he is further limited to occasional pushing or pulling with the lower left extremity. He is limited to frequently climbing ramps or stairs, occasionally climbing ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crouching, crawling, and occasional bilateral reaching. He can understand, carry out and remember simple instructions and make commensurate work related decisions, respond appropriately to supervision, coworkers and work situations, deal with routine changes in work setting, and maintain concentration persistence and pace for up to and including two hours at [a] time with normal breaks throughout the work day.

AR at 20.

To develop Sida's RFC, ALJ O'Melinn relies on three separate grounds. First, ALJ O'Melinn renders an adverse credibility finding against Sida, opining that Sida's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely credible." AR at 21. To support his finding, ALJ O'Melinn contrasts Sida's statements concerning the severity of his symptoms with evidence of record and finds that the evidence does not substantiate Sida's contentions. See AR at 21-23.

As a threshold issue, ALJ O'Melinn addresses two allegations that Sida advances. First, ALJ O'Melinn challenges Sida's contention that the federal Division of Vocational Rehabilitation

---

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, Subpart P, App. 1, Part A1, §§ 12.04(C) & 12.06(C) (2015).

("DVR") stopped assisting him because he was filing for disability. ALJ O'Melinn dismisses this supposition, opining that "[i]t makes little sense that a vocational rehabilitation agency would refuse to work with a person with disabilities." AR at 21. ALJ O'Melinn concludes that Sida's allegation that the "DVR would [n]ot work with him due to alleged disability is incredible." AR at 21. Similarly, ALJ O'Melinn questions Sida's account that "he had to sell his sandblasting equipment to pay child support." AR at 21. ALJ O'Melinn contrasts this statement with Sida's testimony that he "had his license revoked" and had "been incarcerated for non-payment of child support in the past." AR at 21. ALJ O'Melinn reasons that Sida's "attempt to open his own business failed for reasons unrelated to disability," and finds that Sida's statements on both the closure of the sandblasting company and DVR's unwillingness to assist him based on disability "undermine[s] his credibility and the merits of his claim." AR at 21.

ALJ O'Melinn also assigns "little weight" to Sida's allegations concerning the severity of his symptoms and, by O'Melinn's account, "relied upon more credible evidence." AR at 21. ALJ O'Melinn begins this discussion by recalling Sida's statement that "he has not healed from rotator cuff surgery and that his range of motion is limited, only being able to lift his left arm to shoulder height." AR at 21. Then, turning to the medical records, ALJ O'Melinn notes that Sida was treated for shoulder pain in July and August 2013, and prescribed medication. See AR at 22. At a routine follow-up in October 2013, Sida reported that his shoulder pain continued, but that he had not started taking his medication. See AR at 22. The clinician observed that Sida smelled of alcohol and declared that he was at the appointment only to build up his case for disability. See AR at 22. In the ALJ O'Melinn's eyes, this "medication non-compliance coupled with the above statement by [Sida] diminishes the credibility of [Sida]." AR at 22.

ALJ O'Melinn also discusses Sida's shoulder pain from 2014, which Sida describes as originating when he "was fighting and fell on a chair." AR at 22. Falling out of a tree the next year aggravated Sida's injury. See AR at 22. Sida underwent surgery in March 2015, "and follow up appointments indicated steady improvement in pain level and range of motion." AR at 22. Clinical notes remark that Sida "had full range of motion, still had some popping in the shoulder[,] but was not in any pain" at his July 2015, follow up. AR at 22. Moreover, ALJ O'Melinn emphasizes that Sida participated in physical therapy from April through July 2015, for eleven visits, and that notes indicate that he "reached maximum rehabilitation potential [and] no further physical therapy was needed." AR at 22. Based on these clinical observations, ALJ O'Melinn opines that, "[w]hile the fact that [Sida] underwent surgery suggests the symptoms were genuine, this is offset by the fact that the record reflects the surgery was generally successful in relieving the symptoms." AR at 22.

ALJ O'Melinn closes his adverse credibility finding by comparing Sida's statements concerning his mental impairments to the medical evidence of record. Sida reports treatment from several providers for depression, PTSD, and anxiety beginning in 2013 at Ben Archer Health Center. See AR at 22. Sida reports that, at that time, he "hear[d] music in his ears at times along with ringing but denied visual hallucinations." AR at 22. At a follow-up appointment, Sida describes continued anxiety, but also relates that he has not started his prescribed medication and has stopped attending behavioral therapy. See AR at 22. Later treatment at La Frontera in 2014 and 2015 reveals a similar pattern. See AR at 23. Sida was treated for depression and anxiety, but treatment notes record further non-compliance with medication. See AR at 23. Nevertheless, "treatment records note progress with medication effectiveness as they adjust the medication and

amounts," including an escalation of Sida's Global Assessment of Functioning ("GAF") scores[5] from 35 to the 70s in the most recent tests of April and June 2015. AR at 23. ALJ O'Melinn drew two conclusions from Sida's mental health history: (i) that his "non-compliance with medication demonstrates a possible unwillingness to do that which is necessary to improve his condition," which might indicate his symptoms are less severe than purported; and (ii) that, with proper treatment, Sida demonstrates "significant improvement." AR at 22-23.

ALJ O'Melinn also weighs the statements of Sida's girlfriend, Deborah Apodaca, as the second basis for his RFC finding. In ALJ O'Melinn's estimation, the statements that Apodaca provide concerning Sida's condition "appear to only repeat the subjective complaints already testified to and reported by [Sida]." AR at 24. Furthermore, ALJ O'Melinn opines that Apodaca is neither a medical professional nor an uninterested party. See AR at 24. "Most importantly," ALJ O'Melinn concludes, "the clinical or diagnostic medical evidence that is discussed more thoroughly herein does not support [her] statements." AR at 24. Thus, ALJ O'Melinn finds Apodaca's statements "not credible." AR at 24.

Third, ALJ O'Melinn relies on the medical evidence of record. To begin, ALJ O'Melinn accords "some weight" to consultative examiner Dr. Marian Landau, D.O. AR at 23. Dr. Landau finds Sida has full motor strength in the proximal and distal muscle groups in the upper and lower extremities. See AR at 23. Dr. Landau finds that Sida has tenderness in his left forefoot, and ultimately diagnoses him with "chronic left foot pain" and uncontrolled hypertension. AR at 23.

_____

[5]The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." I.H. Monrad Aas, Global Assessment of Functioning (GAF): Properties and Frontier of Current Knowledge, Annals Gen. Psychiatry, May 2010, at 1, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14.

ALJ O'Melinn accords the opinion some weight, rather than significant weight, as he finds that Dr. Landau "did not have the opportunity to review additional evidence only available at the hearing level regarding [Sida's] impairments, including medical improvement." AR at 23.

ALJ O'Melinn also assigns "some weight" to the non-examining agency consultants' opinions who assessed Sida's physical impairments. AR at 23. These two doctors -- Dr. Karine Lancaster, M.D., and Dr. Tom Dees, M.D. -- both opine that Sida "is capable of work at the medium exertional level except [he] is further limited to occasional push/pull with the left lower extremities, can frequently climb ramps and stairs, occasionally climb ladders, ropes[,] and scaffolds, occasionally balance, frequently crouch[,] and occasionally crawl." AR at 23. ALJ O'Melinn hesitates to grant these opinions more than "some weight," as he finds Dr. Landau's opinions "more consistent with the record as a whole," and also because neither Dr. Lancaster nor Dr. Dees has "the benefit of considering the additional evidence that was available only after the reconsideration determination, including subsequent medical evidence and the hearing testimony." AR at 23.

Next, ALJ O'Melinn considers the non-examining agency psychologists' opinions and accords their opinions "little weight." AR at 23-24. These clinicians, Dr. Ralph Rabinowitz, Ph.D., and Dr. Thomas VanHosse, Ph.D., both rate Sida's mental impairments as "less than non-severe." AR at 24. ALJ O'Melinn discounts their opinions, as neither has had the opportunity to review the record submitted at the hearing level, "including mental health records from 2014 and 2015." AR at 24.

Last, ALJ O'Melinn weighs the November 2015, medical assessment that Stone prepared. See AR at 24. Stone assigns Sida: (i) "moderate to marked limitations with memory,

concentration[,] and pace functions"; (ii) "marked limitations in social interactions"; and (iii) and "moderate to marked limitations in adaptation functions."  AR at 24.  ALJ O'Mellin ascribes "little weight" to Stone's opinion for multiple reasons.  First, he notes that Stone is not an acceptable medical source.  <u>See</u> AR at 24.  Further, ALJ O'Melinn remarks that her opinion is "quite conclusory, providing very little explanation of the evidence relied upon in forming that opinion." AR at 24.  ALJ O'Melinn observes that Stone "did not document positive objective clinical or diagnostic findings, and apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Sida], and seemed to uncritically accept as true most, if not all, of what [Sida] reported."  AR at 24.  ALJ O'Melinn disapproves of this approach, as he finds that "there exist good reasons for questioning the reliability of [Sida's] subjective complaints."  AR at 24. Ultimately, ALJ O'Melinn discounts Stone's opinion both for its reliance on Sida's subjective reports, and because it is "inconsistent with [Sida's] admitted activities of daily living."  AR at 24.

In the second phase of step four, ALJ O'Melinn discusses the testimony of VE Sandra Trost, who testified at Sida's administrative hearing that Sida had past relevant work as a heavy equipment operator (Dictionary of Occupational Titles ("DOT")[6] # 859.683-010), a sandblaster (DOT # 503.687-010), a janitor (DOT # 381.687-018), a groundskeeper (DOT # 406.687.010), and as a house repairer (DOT # 869.381-010).  <u>See</u> AR at 25, 30.  Then, at the third and final phase of step four, ALJ O'Melinn finds that Sida is "unable to perform past relevant work."  AR at 25.

---

[6]The DOT includes information about jobs -- classified by their exertional and skill requirements -- that exist in the national economy.  <u>See</u> 20 C.F.R. § 220.134 (2018).  Regulations require the Commissioner to take administrative notice of job information that the DOT provides. <u>See</u> 20 C.F.R. § 404.1566 (2018).

At step five, ALJ O'Melinn relies on Trost's testimony to determine what jobs, if any, Sida could still perform. Trost takes Sida's RFC into consideration and opines that Sida can perform the occupations of furniture rental consultant (DOT # 295.357-018), with a specific vocational preparation ("SVP") level of 2 and 49,378 jobs in the national economy, and usher (DOT # 344.677-014), with an SVP level of 2 and 16,691 jobs in the national economy. See AR at 26. Notably, upon examination by Sida's counsel, Trost acknowledges that the position of furniture rental consultant represents a position with reasoning level three in the DOT. See AR at 68. Notwithstanding this admission, ALJ O'Melinn in his ruling states that, "[p]ursuant to [Social Security Ruling ("SSR")] 00-4p," he has "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR at 26. Having accepted Trost's testimony, ALJ O'Melinn finds Sida "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR at 26. Accordingly, ALJ O'Melinn finds that Sida has not been under a disability, as the Act defines that term, during the relevant time period and denied his claim. See AR at 26.

## STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the agency's final decision.[7] The court's review of that final agency decision is both factual and legal. See Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008)("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing Hamilton v. Sec'y of Health & Human

---

[7]A court's review is limited to the Commissioner's final decision, see 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision and not the Appeals Council's denial of review. See O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994); 20 C.F.R. § 404.981 (2018).

<u>Servs.</u>, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1118 (10th Cir. 2004)(internal quotations omitted)(quoting <u>Doyal v. Barnhart</u>, 331 F.3d 758, 760 (10th Cir. 2003)); <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotations omitted)(quoting <u>Doyal v. Barnhart</u>, 331 F.3d at 760). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." <u>Langley v. Barnhart</u>, 373 F.3d at 1118 (internal quotations omitted)(quoting <u>Bernal v. Bowen</u>, 851 F.2d 297, 299 (10th Cir. 1988)); <u>Hamlin v. Barnhart</u>, 365 F.3d at 1214 (internal quotations omitted)(quoting <u>Bernal v. Bowen</u>, 851 F.2d at 299). Substantial evidence does not, however, require a preponderance of the evidence. <u>See</u> <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)(citing <u>Zoltanski v. Fed. Aviation Admin.</u>, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither reweigh the evidence nor substitute its judgment for that of the Commissioner. <u>See</u> <u>Langley v. Barnhart</u>, 373 F.3d at 1118; <u>Hamlin v. Barnhart</u>, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the court examines "whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases.'" <u>Lax v. Astrue</u>, 489 F.3d at 1084 (quoting <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005)). The court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that [he or] she has done so." <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1019 (10th Cir. 1996). Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled

to relief.  See Langley v. Barnhart, 373 F.3d at 1118; Hamlin v. Barnhart, 365 F.3d at 1214, Doyal v. Barnhart, 331 F.3d at 760.

**SEQUENTIAL EVALUATION PROCESS**

The SSA has devised a five-step sequential evaluation process to determine disability.  See Barnhart v. Thomas, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments.[8]  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & 404 Subpart P, App. 1.  If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the RFC.  See Winfrey v. Chater, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e).  In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his or her past relevant work to determine if the claimant is still capable of performing his or her past work.  See Winfrey v. Chater, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If a claimant is not prevented from performing his or her past work, then he or she is not disabled.  See 20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Talbot v. Heckler, 814 F.2d 1456, 1460 (10th Cir. 1987).  If the claimant cannot return to his or her past work, then

---

[8]The Listing of Impairments is contained in 20 C.F.R. Appendix 1 to Subpart P of Part 404. The Listing of Impairments provides, "for each of the major body systems[,] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).

the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. See Barnhart v. Thomas, 540 U.S. at 24-25; see also Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988)(discussing the five-step sequential evaluation process in detail).

## ANALYSIS

Sida advances three allegations of error, but the Court need only address the last, as the Court concludes that it necessitates remand. Sida challenges ALJ O'Melinn's step five findings on multiple fronts. First, he asserts that ALJ O'Melinn commits legal error by failing to resolve a conflict between Trost's testimony and the DOT concerning Sida's ability to perform the job of furniture rental consultant. See Motion at 22-24. Additionally, Sida contends that ALJ O'Melinn did not perform the analysis Trimiar v. Sullivan, 966 F.2d 1326 (10th Cir. 1992), requires for the remaining, borderline number of usher jobs that Trost identified in the national economy, thereby depriving his opinion of the substantial evidence required for affirmance. See Motion at 24-27. Both arguments persuade the Court for the reasons set forth below.

## I.      ALJ O'MELINN COMMITTED MULTIPLE LEGAL ERRORS AT STEP FIVE.

Sida argues that Trost erroneously identifies the furniture-rental-consultant position as a position that he could hold with his assigned RFC. Sida initiates this challenge by recalling the relevant portion of ALJ O'Melinn's hypothetical to Trost, which limited Sida to the ability to "understand, remember, and carry out simple instructions and make commensurate work-related decisions." Motion at 23-24 (internal quotation marks omitted)(quoting AR at 64-65). He argues that "there is a discrepancy" between this RFC and the reasoning development level which the DOT identifies as being necessary for the position of furniture rental consultant. Motion at 22.

Sida explains that the reasoning development code for furniture rental consultant in the DOT is "R3," which the DOT defines as requiring the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[ and d]eal with problems involving several concrete variables in or from standardized situations." Motion at 23 (emphasis omitted).

In addition to highlighting the textual conflict between the RFC and the DOT, Sida also directs the Court to the United States Court of Appeals for the Tenth Circuit's decision in <u>Hackett v. Barnhart</u>, where he contends the Tenth Circuit "held that a level-two reasoning appeared to be consistent with an RFC where the claimant 'retains the attention, concentration, persistence, and pace levels required for simple and routine work tasks.'" Motion at 23 (quoting <u>Hackett v. Barnhart</u>, 395 F.3d at 1176). Thus, Sida concludes that "ALJ O'Melinn's reliance upon inconsistent and unsupported VE testimony is legal error and is not substantial evidence supporting his Step 5 finding." Motion at 24. He bolsters his conclusion by reminding the Court both that it is ALJ O'Melinn's duty to resolve any conflicts between Trost's testimony and the DOT pursuant to SSR 00-4p, and that the Commissioner bears the burden at step five "to prove that the claimant can perform other work existing in the national economy." Motion at 24 (internal quotation marks omitted)(quoting <u>Talbot v. Heckler</u>, 814 F.2d at 1460)(citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).

The Commissioner responds only circuitously to Sida's argument. Notably, she never concedes a conflict between Trost's recommendation and the DOT. The Commissioner emphasizes instead that the reasoning level at issue is just one component of the General

Educational Development ("GED")[9] calculus of the DOT, which "embraces those aspects of education (formal and informal) that are required of a worker for satisfactory job performance." Response at 19 (emphasis omitted)(citing DICOT, App. C, 1991 WL 688702). The Commissioner acknowledges the Hackett v. Barnhart court's observation "that a limitation to 'simple and routine tasks' *seemed* inconsistent with the demands of level 3 reasoning," but questions the applicability of Hackett v. Barnhart's guidance, as, in Hackett v. Barnhart, the "Tenth Circuit did not discuss the claimant's education level." Response at 19 (emphasis in original)(citing Hackett v. Barnhart,

---

[9]The DOT uses the acronym GED to refer to General Educational Development, which it describes as follows:

General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.

The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. The description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States. An analysis of mathematics courses in school curricula reveals distinct levels of progression in the primary and secondary grades and in college. These levels of progression facilitated the selection and assignment of six levels of GED for the mathematical development scale.

However, though language courses follow a similar pattern of progression in primary and secondary school, particularly in learning and applying the principles of grammar, this pattern changes at the college level. The diversity of language courses offered at the college level precludes the establishment of distinct levels of language progression for these four years. Consequently, language development is limited to five defined levels of GED inasmuch as levels 5 and 6 share a common definition, even though they are distinct levels.

DICOT, App. C, 1991 WL 688702.

395 F.3d at 1176). Rather, she maintains that, in two recent unpublished decisions, "the Tenth Circuit has recognized that GED levels describe general educational background, not specific mental or skill requirements." Response at 19 (citing Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013)(unpublished); Mounts v. Astrue, 479 F. App'x 860, 868 (10th Cir. 2012)(unpublished)). Thus, based on Sida having achieved at least a high school education, the Commissioner posits that "there is no actual conflict in this case between the vocational expert testimony and the DOT based on *Hackett*." Response at 20. Accordingly, she concludes, "[i]n the absence of an actual conflict, any failure by the ALJ to explain any resolution between the vocational expert's testimony and the DOT job descriptions is harmless." Response at 20 (citing Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009)).

### A. SSR 00-4P DEMANDS IDENTIFYING AND RESOLVING VE CONFLICTS WITH THE DOT.

"In making disability determinations," the SSA relies "primarily on the DOT" at steps four and five of the sequential evaluation process. SSR 00-4p, 2000 WL 1898704, at *2. Nonetheless, ALJs may also use VEs "at these steps to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2. Occupational evidence that a VE provides "generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2. "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the

explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." SSR 00-4p, 2000 WL 1898704, at *2.

Where an ALJ takes testimony from a VE, the ALJ assumes two affirmative responsibilities. First, in all cases where a VE provides evidence about the requirements of a job or occupation, SSR 00-4p commands the ALJ to "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. Then, in those cases where the VE's testimony appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at *4. Should such a conflict arise, an ALJ "must resolve the conflict before relying on the VE" testimony to support a disability determination. SSR 00-4p, 2000 WL 1898704, at *4. Furthermore, the ALJ must explain how the conflict was resolved, "irrespective of how the conflict was identified." SSR 00-4p, 2000 WL 1898704, at *4.

## B. HACKETT V. BARNHART REQUIRES CONSISTENCY BETWEEN SIDA'S RTC AND THE JOB'S REASONING LEVEL.

In Hackett v. Barnhart, the Tenth Circuit was asked to decide whether a limitation to simple and routine tasks precluded a claimant from working in a position requiring reasoning level three. There, the claimant's RFC provided that, "[m]entally, [the claimant] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." 395 F.3d at 1176 (citation and internal quotation marks omitted). Based on that RFC, a VE at the claimant's administrative hearing had testified that she could work as both a call-out operator and a surveillance-system monitor, which both require a reasoning level of three. See 395 F.3d at 1176. The claimant argued, however, that "her RFC, as found by the ALJ, [was] incompatible with jobs requiring a reasoning level of three." 395 F.3d at 1176.

To decide the issue, the Tenth Circuit in <u>Hackett v. Barnhart</u> looked to the DOT's plain language. The DOT defines reasoning level three as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and d]eal with problems involving several concrete variables in or from standardized situations." 395 F.3d at 1176 (alterations in original)(internal quotation marks omitted)(quoting DICOT, App. C, 1991 WL 688702). The Tenth Circuit in <u>Hackett v. Barnhart</u> then compared that definition with GED reasoning level two, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." 395 F.3d at 1176 (alterations in original)(internal quotation marks omitted)(quoting DICOT, App. C, 1991 WL 688702). By comparing the two levels, the Tenth Circuit determined that the claimant's limitation to "'simple and routine work tasks' . . . seems inconsistent with the demands of level-three reasoning." 395 F.3d at 1176 (citation omitted). Rather, the Tenth Circuit opined, "level-two reasoning appears more consistent with Plaintiff's RFC." 395 F.3d at 1176.

C.     **ALJ O'MELINN ERRED BY FAILING TO RESOLVE THE CONFLICT BETWEEN TROST'S TESTIMONY AND THE DOT.**

Even within this first subset of Sida's claim, two grounds for remand exist. The first derives from SSR 00-4p, which imposes upon ALJs "an affirmative responsibility to ask . . . the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. Here, ALJ O'Melinn conspicuously neglected to ask. <u>See</u> AR at 60-68. Yet, in his decision denying Sida's disability claims, ALJ O'Melinn states that, "[p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent

with the information contained in the Dictionary of Occupational Titles." AR at 26. Unfortunately, he did no such thing.

Additionally, the Court will remand this matter because it is not apparent from the record or the parties' briefing that Sida has the ability to work as a furniture rental consultant under his present RFC. The Court recognizes that the Tenth Circuit's language in Hackett v. Barnhart is not mandatory and, moreover, that the language may be dicta. See Hackett v. Barnhart, 395 F.3d at 1176 (noting that the limitation to simple and routine tasks seems inconsistent with the demands of level-three reasoning). Nevertheless, the same logic that persuaded the Tenth Circuit in Hackett v. Barnhart persuades this Court.

In this cause, the relevant portion of Sida's RFC states that "[h]e can understand, carry out[,] and remember simple instructions and make commensurate work related decisions." AR at 20. Just as in Hackett v. Barnhart, this limitation seems facially incompatible with a GED reasoning level 3 position where a worker must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT, App. C, 1991 WL 688702. To the contrary -- but just as in Hackett v. Barnhart -- Sida's RFC limitation more closely aligns with reasoning level 2, where a worker need only "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." DICOT, App. C, 1991 WL 688702. Thus, despite the Commissioner's position that "there is no actual conflict in this case between the vocational expert testimony and the DOT," Response at 20, based on the DOT's plain language

and on the guidance in <u>Hackett v. Barnhart</u>, an actual conflict exists, and ALJ O'Melinn did not resolve it.  In that failure, ALJ O'Melinn committed legal error requiring remand.

###    D.    WHAT REMAINS OF ALJ O'MELINN'S STEP FIVE LACKS SUBSTANTIAL EVIDENCE.

Notwithstanding ALJ O'Melinn's failure to resolve the conflict described above, a harmless error argument could be advanced based on the remaining position, as an usher, that ALJ O'Melinn identified.  In fact, the Commissioner urges this course.  <u>See</u> Response at 20-21.  The Commissioner observes that "the second job identified by the vocational expert (Usher) has a GED reasoning level of 2," and, "[c]onsequently, any alleged error by the ALJ relying on the Furniture Rental Consultant job as one Plaintiff could perform did not impact the ultimate outcome of this case."  Response at 20-21.

Sida identifies, however, a separate basis for reversal based on the usher position.  He begins by reminding the Court that "[i]t is the Commissioner's burden at Step 5 to prove that a claimant retains the RFC to perform other jobs existing in 'significant numbers' in the national economy."  Motion at 25 (quoting <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1089 (10th Cir. 1999)).  Sida then directs the Court to <u>Trimiar v. Sullivan</u>, 966 F.2d at 1330-32, for the "non-exhaustive list of factors to consider in determining whether work exists in significant numbers."  Motion at 25.  Based on Trost's testimony that 16,691 usher positions exist in the national economy, Sida extrapolates that only 333.82 usher jobs exist per state.  <u>See</u> Motion at 26.  Furthermore, he contends that this number does not rise to the significant level which the statute requires.  Therefore, Sida concludes that, based on this "dubious and borderline" number of jobs, ALJ O'Melinn "should have conducted the inquiry suggested by <u>Trimiar</u> in doubtful cases."  Motion at 27.

The Commissioner responds that the Tenth Circuit "has not established the number of jobs necessary to be considered significant because 'each case should be evaluated on its individual merits.'" Response at 21 (quoting Trimiar v. Sullivan, 966 F.2d at 1330). Similarly, she explains that "[SSA] policy does not dictate what number of jobs may or may not be significant in a particular case." Response at 21. Rather, the Commissioner opines, "a determination as to what is significant is left to the ALJ, weighing the statutory language and applying it to the particular facts." Response at 21.

Applying these principles, the Commissioner contends that "[t]his is what the ALJ did here." Response at 21. By her estimation, ALJ O'Melinn's finding is based on VE testimony, which the regulation allows. See Response at 21 (citing 20 C.F.R. § 404.1566(e) (2018)). Additionally, the Commissioner cites to one unpublished Tenth Circuit decision for the proposition that as few as 11,000 jobs can constitute a significant number of jobs in the national economy. Response at 21-22 (citing Rogers v. Astrue, 312 F. App'x 138, 141-42 (10th Cir. 2009)(unpublished)). Finally, she contends that ALJ O'Melinn, in fact, discusses the Trimiar v. Sullivan factors in that he addresses Sida's severe mental and physical impairments, his ability to travel, and the work Sida could perform through the VE's testimony. The Commissioner concludes that, in the aggregate, ALJ O'Melinn's evaluation satisfies the approach that the Tenth Circuit announced in Trimiar v. Sullivan. See Response at 22.

> 1. **The Commissioner's Step Five Burden to Show Sufficient Jobs in the National Economy for a Person with Sida's Impairments.**

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," Jensen v. Barnhart, 436 F.3d 1163, 1168

(10th Cir. 2005), "given her age, education, and work experience," Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation marks omitted)(quoting Hackett v. Barnhart, 395 F.3d at 1171). See 20 C.F.R. §§ 416.960, .963-.965 (2018)(explaining that a claimant's vocational factors of age, education, and work experience are considered, along with the claimant's RFC, to determine at step five whether there are a significant number of jobs that a claimant can perform). The Commissioner meets this burden if substantial evidence supports the decision. See Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).

To determine whether jobs exist in significant numbers, regulations require the Commissioner to take administrative notice of reliable job information from various governmental and other publications, including the DOT. See 20 C.F.R. § 416.966(d)(1) (2018). The Commissioner may also use the services of a VE or of another specialist to determine whether a claimant's work skills can be used in specific occupations. See 20 C.F.R. § 416.966(e). See also Rogers v. Astrue, 312 F. App'x at 142 (explaining that the VE's purpose is to go beyond facts already established through publications eligible for judicial or administrative notice, and provide an alternative avenue of proof)(citing Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993)).

### 2. The Trimiar v. Sullivan Factors and the Facts of this Case Counsel Remand.

In Trimiar v. Sullivan, the issue was whether 650 to 900 jobs existing in the region constituted a significant number. See 966 F.2d at 1329-32. The Tenth Circuit stated that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" and noted several factors courts may consider in evaluating the "significant number" issue, including: (i) "the level of claimant's disability"; (ii) "the reliability of the vocational expert's testimony"; (iii) "the distance claimant is capable of traveling to engage in the

assigned work"; (iv) "the isolated nature of the jobs"; and (v) "the types and availability of such work." 966 F.2d at 1330 (internal quotation marks omitted)(quoting <u>Jenkins v. Bowen</u>, 861 F.2d 1083, 1087 (8th Cir. 1988)). The Tenth Circuit ultimately determined that the ALJ had considered those factors and that substantial evidence supported his decision. <u>See</u> 966 F.2d at 1332.

The Tenth Circuit has made it clear that judicial line-drawing in this context is inappropriate, that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1144 (10th Cir. 2004)(internal quotation marks omitted)(quoting <u>Trimiar v. Sullivan</u>, 966 F.2d at 1330). Nevertheless, this general rule is not without exception, as the Tenth Circuit in <u>Allen v. Barnhart</u> recognizes:

> [I]t nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

357 F.3d at 1145. Thus, the district court may supply a missing dispositive finding, but only in "exceptional circumstance[s]." <u>Allen v. Barnhart</u>, 357 F.3d at 1145.

Here, ALJ O'Melinn does not explicitly evaluate or engage in a fact-specific consideration of the numerical significance of 16,691 usher positions in the national economy. <u>See</u> AR at 26. Rather, ALJ O'Melinn considers this number only in conjunction with the 49,378 jobs identified for the position of furniture rental consultant. <u>See</u> AR at 26. Furthermore, he considered the sum of the two job positions against the backdrop of the numerous step five errors already identified <u>supra</u> at 15-18. On these facts, the Court cannot say this analysis represents the "exceptional

circumstance" where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." <u>Allen v. Barnhart</u>, 357 F. 3d at 1145. The Court therefore will adhere to the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and further declines to supply a dispositive finding of harmless error to conclude that there are a "significant number" of jobs available to Sida in the national economy. <u>Allen v. Barnhart</u>, 357 F.3d at 1144. To make that finding would represent the improvident judicial factfinding against which the Tenth Circuit cautions in <u>Allen v. Barnhart</u>.

In conclusion, ALJ O'Melinn's failure to resolve the conflict between the VE's testimony and the DOT regarding Sida's limitation to simple instructions and simple work-related decisions, and the reasoning-level-three job of furniture rental consultant which the VE identified, is reversible error. <u>See</u> <u>Hackett v. Barnhart</u>, 395 F.3d at 1176; <u>Haddock v. Apfel</u>, 196 F.3d at 1091. The Court further concludes that the remainder of ALJ O'Melinn's step five finding cannot be saved through a finding of harmless error, and directs the ALJ to consider all the <u>Trimiar v. Sullivan</u> factors on remand, given the relatively low number of usher jobs in the national economy.

**IT IS ORDERED** that the Commissioner's final decision is remanded for further administrative proceedings.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Michael D. Johnson
Laura J. Johnson
Michael D. Armstrong Law Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John C. Anderson
   United States Attorney
Manuel Lucero
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

Dorrelyn Dietrich
Steven Martyn
Social Security Administration
Office of the General Counsel
Denver, Colorado

    *Attorneys for the Defendant*